UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br> v.<br><br>MEDTRONIC, INC., WILLIAM A. HAWKINS, III, and GARY ELLISS,<br><br>    Defendants. | Case No. 08-cv-06324-PAM-AJB |

**MEMORANUM OF LAW IN SUPPORT OF THE IRON WORKERS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND LIAISON COUNSEL**

The Iron Workers Locals 40, 361 & 417 Union Security Funds ("Iron Workers 40") and Iron Workers Local 580 Joint Funds ("Iron Workers 580") (collectively the "Iron Workers"), respectfully submit this memorandum in support of their motion to be appointed as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Act of 1995 (the "PSLRA"), and for approval of their selection of the law firm of Pomerantz Haudek Block Grossman & Gross LLP ("Pomerantz") as Lead Counsel and Zimmerman Reed, PLLP as Liaison Counsel for the Class.

**PRELIMINARY STATEMENT**

This action arises from allegations concerning violations of the federal securities laws by Medtronic, Inc. ("Medtronic" or the "Company") and certain of its officers (collectively "Defendants"). During the period from November 19, 2007 through November 17, 2008 (the "Class Period"), Defendants disseminated materially false and misleading information concerning the INFUSE Bone Graft. Defendants' misstatements artificially inflated the price of Medtronic securities and caused substantial damage to the Company's investors.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court must consider which movant has the "largest financial interest" in the relief sought by the Class in this litigation and whether there has been a *prima facie* showing that that movant is an adequate and typical class representative under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The Iron Workers believe that they are the "most adequate plaintiff" under the PSLRA to serve as Lead Plaintiff on behalf of investors in this action. As set forth in more detail below, the Iron Workers' significant financial interest in this matter is evidenced by, among other things, its collective loss on its members' investments in Medtronic securities during the Class Period. The Certifications required by the PSLRA setting forth the Iron Workers' transactions in Medtronic securities are attached thereto. *See* Declaration of Patrick V. Dahlstrom in Support of the Memorandum of Law in Support of the Iron Workers' Motion for Appointment of Lead Plaintiff and Approval of

2

Lead Counsel and Liaison Counsel (the "Dahlstrom Dec."), at Exhibits B and C. Also, attached are accompanying charts reflecting the calculations of the losses of the Iron Workers. *See* Dahlstrom Dec., Exhibit D. These transactions and losses demonstrate that the Iron Workers have a substantial financial interest in this matter.

Moreover, as sophisticated institutional investors with experience supervising counsel in complex securities litigation, the Iron Workers are the prototypical lead plaintiffs envisioned by the PSLRA. These institutions share common goals of strengthening corporate governance to protect investors from fraudulent reporting by publicly traded companies such as Medtronic, as well as ensuring that the Class will benefit from the active involvement and supervision of class counsel. The members of the Iron Workers have agreed and are determined to work together to seek Lead Plaintiff appointment and prosecute the case on behalf of the Class. Thus, the Court can be assured that the appointment of the Iron Workers will fulfill Congress' goal in enacting the PSLRA to empower institutional investors with a real financial interest in the litigation and that the Iron Workers will vigorously represent the interests of the Class.

## FACTUAL BACKGROUND

Medtronic is a corporation that manufactures medical devices. The Company is incorporated in the State of Minnesota and maintains its principal executive offices at 710 Medtronic Parkway, Minneapolis, Minnesota 55432.

INFUSE is a surgically-implanted medical device containing a genetically engineered protein designed to stimulate bone growth. The United States Food and Drug Administration ("FDA") has approved INFUSE only for limited applications.

Specifically, INFUSE is FDA-approved solely for the treatment of degenerative discs in the lower lumbar region of the spine; fractures of the tibia; and certain facial/oral surgeries. Its principal application (and the one originally approved by the FDA) is for the treatment of degenerative lumbar discs.

Throughout the Class Period, Defendants presented INFUSE to the investing public as a valuable, reliable, and continuously increasing material source of revenues for the Company, responsible, for example, for approximately $800 million in reported revenue during Medtronic's last fiscal year. This portrayal of INFUSE and its material positive effect on the Company's financial condition were false and misleading because Defendants concealed and failed to disclose material facts known to or recklessly ignored by them about INFUSE that were necessary to make their otherwise positive statements about the product and its financial benefits accurate, truthful, and not misleading to investors. In particular, Defendants did not disclose the extent to which revenues from sales of INFUSE were dependent on applications of the product not approved by the FDA (so called "off-label" uses); did not disclose that a significant and increasing number of patients subjected to such off-label uses of INFUSE were suffering severe medical complications; and did not disclose that the extensive off-label usage of INFUSE was the result of an unlawful campaign by Defendants to market and encourage off-label use of the product. This undisclosed material information was known to or recklessly ignored by the Defendants.

Beginning in September 2008, *The Wall Street Journal* ran the first of a series of articles disclosing the complications arising from the "off-label" applications of INFUSE

and the financial ties between Medtronic and physicians using INFUSE in "off-label" procedures. Other articles followed by *The Wall Street Journal* and other publications, which led to an investigation of the allegations in *The Wall Street Journal* articles by the United States Senate Committee on Finance, which has jurisdiction over Medicare and Medicaid programs.

On September 4, 2008, Medtronic securities fell $1.36 and closed at $53.78.

On November 18, 2008, Medtronic issued its financial results for the second quarter of fiscal year 2009 ended October 24, 2008, and reported a $30 million decline from its previous quarter in the business segment related to INFUSE. This represented a sharp decline from analysts' estimates and the Company's quarter to quarter consecutive growth in that business segment. Analysts related the fall off of the business segment to and underestimation of the off-label use of INFUSE. Later that same day, CEO William Hawkins surprised analysts during a conference call when he advised them that Medtronic had received a subpoena from the United States Department of Justice related to an investigation of off-label use of INFUSE.

A stunned market reacted accordingly and Medtronic securities fell from $36.42 per share on November 17 to $31.60 on November 18 – a decline of 13% in the price of Medtronic securities with a trading volume of more than three times the daily volume.

**Proposed Lead Plaintiff**

The Iron Workers consist of two union pension funds that have worked together in the past in securities litigation, and have a relationship that pre-exists their involvement in this action, as well as their representation by proposed lead counsel. Indeed, the two

5

pension funds have their own individual counsel to advise them, who also have a relationship representing the pension funds that pre-exists their involvement in this action.

The Iron Workers 40's funds are invested for the union members and managed by the Fund Administrator, Brian J. Sabbagh. Mr. Sabbagh is appointed by and reports to the Board of Trustees, and is authorized to institute this action on behalf of Iron Workers 40. During the Class Period, Iron Workers 40 purchased 134,850 shares of Medtronic securities in the amount of $6,837,965. It sold 42,830 shares during the Class Period, retained 92,020 shares at the close of the Class Period, and currently retains 68,000 shares. Under Last-In-First-Out Methodology ("LIFO"), Workers 40 suffered a loss of approximately $2,256,209. Under First-In-First-Out Methodology ("FIFO"), Iron Workers 40 suffered a loss of approximately $2,656,274.

The Iron Workers 580's funds are invested for the union members and managed by the Fund Director, Peter Myers. Mr. Myers is appointed by and reports to the Board of Trustees, and is authorized to institute this action on behalf of Iron Workers 580. During the Class Period, Iron Workers 580 purchased 53,990 shares of Medtronic securities in the amount of $2,692,843. It sold 12,730 shares during the Class Period, retained 41,260 shares at the close of the Class Period, and currently retains 38,600 shares. Under LIFO, Iron Workers 580 suffered a loss of approximately $846,536; under FIFO, Iron Workers 580 suffered a loss of approximately $1,000,106.

In the aggregate, the Iron Workers purchased 188,840 Medtronic shares during the Class Period at a cost of $9,530,808, retained 133,280 shares at the end of the Class

Period, and suffered losses of $3,102,746 (LIFO) and $3,656,379 (FIFO) upon the disclosures of the wrongdoing by the defendants.

## ARGUMENT

## I.   THE IRON WORKERS SHOULD BE APPOINTED LEAD PLAINTIFF

Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of Lead Plaintiffs in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i) and (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, the Iron Workers satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiff and, therefore, should be appointed Lead Plaintiff for the Class.

### A.     The Iron Workers Are Willing To Serve as Class Representative

On December 10, 2008, counsel in the above captioned action caused a notice to be published pursuant to Sections 21D(a)(3)(A)(i) of the PSLRA announcing that a securities class action had been filed against the defendants herein.  Investors of Medtronic securities had until February 9, 2009, to file a motion to be appointed as Lead Plaintiff.  *See* Dahlstrom Dec., Exhibit A.

The Iron Workers have filed the instant motion pursuant to the Notice and have attached Certifications attesting that they are willing to serve as a Lead Plaintiff for the Class and are willing to provide testimonies at deposition and trial, if necessary.  *See* Dahlstrom Dec., Exhibits B and C. Mr. Sabbagh signed the Certification for the Iron Workers 40 and is authorized to litigate this case on behalf of Iron Workers 40 for its losses in its investments of Medtronic securities during the Class Period. Mr. Myers signed the Certification for Iron Workers 580 and is authorized to litigate this case on behalf of Iron Workers 580 for its losses in its investments of Medtronic securities during the Class Period. Accordingly, the Iron Workers satisfy the first requirement to serve as Lead Plaintiff for the Class.

### B.     The Iron Workers Have the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."   15 U.S.C. § 78u-4(a)(3)(B)(iii); *see In re Donkenny, Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997).

As of the time of the filing of this motion, the Iron Workers believe that they have the largest financial interest of anyone in the relief sought by the Class. The Iron Workers purchased (1) 188,840 shares of Medtronic securities; (2) expended $9,530,808 for their shares of Medtronic securities and (3) retained 133,280 shares. Under LIFO, the Iron Workers suffered a loss of approximately $3,102,746 related to its transactions of Medtronic securities. Under FIFO, the Iron Workers suffered a loss of approximately $3,656,379 related to its transactions of Medtronic securities. *See* Dahlstrom Dec., Exhibit D. S*ee also In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 993 (N.D. Cal. 1999); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998); *Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). Because the Iron Workers possess the largest financial interest in the outcome of this litigation, they may be presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### C. The Iron Workers Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

> (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification -- a prima facie showing that the Movant satisfy the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60, 64 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. Amsouth Bancorporation*, 176 F.R.D. 583 (M.D. Fla. 1997)). *See generally Averdick v. Hutchinson Tech., Inc.*, 2006 U.S. Dist. LEXIS 47445, at *10 (D. Minn. Feb. 9, 2006); *Aviva Partners LLC v. Navarre Corp.*, 2005 WL 3782255, at *1 (D. Minn. Dec. 13, 2005); *Meeuwenberg v. Best Buy Co., Inc.*, 2004 WL 950362, at *2 (D. Minn. Apr. 29, 2004); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 704 n. 8 (D. Minn. 1998).

The Iron Workers fulfill all of the requirements of Rule 23. The Iron Workers share substantially similar questions of law and fact with the members of the Class and their claims are typical of the members of the class. The Iron Workers and all members of the Class allege that defendants violated the Exchange Act by publicly disseminating a series of false and misleading statements concerning Medtronic. The Iron Workers, as did all of the member of the Class, purchased Medtronic securities during the Class Period at prices artificially inflated, maintained, or stabilized by Defendants' misrepresentations

and omissions and were damaged thereby. These shared claims also satisfy the requirement that the claims of the representative parties be typical of the claims of the Class.

Thus, the close alignment of interests between the Iron Workers and other Class members, as well as the strong desire of the proposed Lead Plaintiff to prosecute this action on behalf of the Class, provide ample reasons to grant the Iron Workers' motion to serve as Lead Plaintiff of the Class.

### D. The Iron Workers Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption in favor of appointing the Iron Workers as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

(aa)  will not fairly and adequately protect the interest of the class; or

(bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

The Iron Workers' ability and desire to fairly and adequately represent the Class have been discussed above. The Iron Workers are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class. Moreover, as noted above, the Iron Workers have a relationship that pre-exits the filing of this action and have their own counsel to assist them in controlling this litigation for the benefit of the entire Class. Accordingly, the Iron Workers should be appointed Lead Plaintiff for the Class.

## II. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Iron Workers have selected the law firm of Pomerantz Haudek Block Grossman & Gross LLP as Lead Counsel and Zimmerman Reed PLLP as Liaison Counsel. The Pomerantz firm and Zimmerman firm are highly experienced in the area of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the firms' resumes. *See* Dahlstrom Dec., Exhibits E and F. As a result of their extensive experience in litigation involving issues similar to those raised in this action, the Iron Workers' counsel have the skill and knowledge which will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Iron Workers' selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the Iron Workers respectfully request the Court issue an Order (a) appointing the Iron Workers as Lead Plaintiff of the Class; (b) approving Pomerantz Haudek Block Grossman & Gross LLP as Lead Counsel and Zimmerman

Reed PLLP as Liaison Counsel; and (c) granting such other relief as the Court may deem to be just and proper.

Dated: February 9, 2009                    Respectfully Submitted,

                                           ZIMMERMAN REED, P.L.L.P.


                                           By: /s/ Carolyn G. Anderson_____
                                           Carolyn G. Anderson, No. 275712
                                           Patricia A. Bloodgood, No. 157673
                                           Brian C. Gudmundson, No. 336695
                                           651 Nicollet Mall, Suite 501
                                           Minneapolis, MN  55402
                                           Tel.:  (612) 341-0400
                                           Fax.:  (612) 341-0844


                                           POMERANTZ HAUDEK BLOCK
                                             GROSSMAN & GROSS LLP
                                           Marc I. Gross
                                           Fei-Lu Qian
                                           100 Park Avenue
                                           New York, NY 10017
                                           Telephone:   (212) 661-1100
                                           Facsimile:    (212) 661-8665

                                           POMERANTZ HAUDEK BLOCK
                                              GROSSMAN & GROSS LLP
                                           Patrick V. Dahlstrom
                                           Leigh R. Smollar
                                           Joshua B. Silverman
                                           One North La Salle Street
                                           Suite 2225
                                           Chicago, IL  60602
                                           Telephone:   (312) 377-1181
                                           Facsimile:    (312) 377-1184

                                           **Attorneys for the Iron Workers**