# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

**PLACEHOLDER FOR
DECLARATION OF MICHAEL BLATCHLEY**

MINNEAPOLIS FIREFIGHTERS'
RELIEF ASSOCIATION, *et al*.,

                Plaintiff(s)

v.                                        Case Number: 0:08-cv-06324-PAM-AJB

MEDTRONIC, INC., *et al*.,

                Defendant(s)

This document is a place holder for the following item(s) which are filed in conventional or physical form with the Clerk's Office:

DECLARATION OF MICHAEL BLATCHLEY

If you are a participant in this case, this filing will be served upon you in conventional format.

This filing was not e-filed for the following reason(s):

  __x__ Item Under Seal pursuant to a court order* (Document number of protective order: __103__)


* Filing of these items requires Judicial Approval.

E-file this place holder in ECF in place of the documents filed conventionally. File a copy of this Placeholder and a copy of the NEF with the Clerk's Office along with the conventionally filed item(s).

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MEDTRONIC, INC., *et al.*,<br><br>Defendants. | Civil No. 0:08-cv-06324-PAM-AJB |

**DECLARATION OF MICHAEL D. BLATCHLEY**

I, Michael D. Blatchley, hereby declare as follows:

1. I am an attorney at Bernstein Litowitz Berger and Grossmann LLP ("BLBG") and am admitted *pro hac vice* to this Court. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2. I was born in Minneapolis, Minnesota in 1978 and graduated from Edina High School in Edina, Minnesota, in 1996. I attended the University of Wisconsin-Madison, where I received a bachelor of arts in Journalism and Political Science in 2000, and attended and received a juris doctorate from Brooklyn Law School in 2007. I have worked at BLBG since September 2007, where my practice has been primarily devoted to prosecuting securities class actions such as this one. At BLBG, I have been involved in overseeing and conducting investigations and drafting complaints that rely on facts provided by confidential witnesses ("CWs") in numerous actions alleging securities fraud and other corporate misconduct.

3. In November 2008, under the direction of BLBG senior partner Salvatore Graziano, I, along with several other BLBG attorneys and investigators, was assigned to investigate and research facts supporting claims for securities fraud alleged in *Minneapolis Firefighters' Relief Assoc. v. Medtronic*, Civ. No. 08-6324. As part of that investigation, I worked closely with Salvatore Graziano and Michael Petrusic to supervise and monitor the work of BLBG's in-house investigators, including BLBG's Director of Investigations, Amy Bitkower, and BLBG investigators Lisa Burr and Jaclyn Chall, who interviewed numerous former Medtronic employees concerning the allegations in this case.

1

4. In overseeing the investigation and in preparing Lead Plaintiffs' Consolidated Class Action Complaint (ECF #68), I regularly reviewed interview memoranda prepared by the investigators, frequently followed up with questions and input on those interviews, and regularly discussed the facts learned through those interviews and the progress of the investigation with BLBG's investigators. Throughout this process, I sought to confirm, through numerous discussions with the investigators, that the information obtained from the CWs was accurate, and took great care in drafting, editing and reviewing the allegations in the Complaint—including those that were based on the investigators' interviews with the CWs—to ensure they were correct and accurately reflected the interview memoranda prepared by the investigators. In no way was any fact alleged in the Complaint intentionally misstated.

5. I have reviewed the declarations submitted by the Defendants from the CWs cited in the Complaint, and the paragraphs containing information attributed to each witness. Notwithstanding the witness declarations, the Complaint accurately reflects the information provided by the witnesses, with the following exceptions:

(a) ▓▓▓▓▓▓, who is identified in the Complaint as CW 14, stated that he worked at Kyphon from 2005 until it was acquired by Medtronic in November 2007. He then remained with Medtronic until August 2008. ▓▓▓▓▓▓ noted that even while he was at Kyphon before it was acquired by Medtronic, he worked closely with Medtronic's Spinal and Biologics division.

2

(b) ███████, who is identified in the Complaint as CW 4, appears to have stated that Medtronic would have a surgeon (instead of sales representatives) instruct groups of other surgeons to use roughly half the indicated dosage of rhBMP-2 in cervical applications. However, while this point is unclear, ███████ stated that off-label uses of INFUSE, including cervical fusion procedures, were communicated at national sales meetings, and he additionally stated that Medtronic instructed its sales force to inform surgeons as to how other surgeons were using the product in off-label applications.

6. On several occasions, I participated directly in the investigators' interviews with former Medtronic employees, including interviews with CWs 2, 9, and 13.

7. On June 18, 2009, I, along with Lisa Burr, contacted CW 2 to follow up on several topics that CW 2 had previously discussed with Ms. Burr. The facts attributed to CW 2 in the Complaint that are based on my interview with CW 2 are accurate. Further, the statements CW 2 made to Ms. Burr and me during our June 18, 2009 interview were consistent with what CW 2 had previously told Ms. Burr in their prior conversation on May 18, 2009. I understand that, since the time of our interview, CW 2 has testified before the grand jury investigating Medtronic's criminal conduct and has invoked his Fifth Amendment rights in response to a subpoena issued by Lead Counsel.

8. On August 3, 2009, in the midst of an interview that Ms. Chall was conducting with CW 13 and in response to something that CW 13 had told her, Ms. Chall dialed my extension and conferenced me into the line so that I could participate in the

3

interview of CW 13 with Ms. Chall. I introduced myself to CW 13 as one of the attorneys working on the Medtronic matter and discussed the focus of our investigation and the allegations in the lawsuit. During that interview, CW 13 made statements to Ms. Chall and me that formed the basis for the allegations in paragraphs 109-10 of the Complaint, and those allegations accurately reflect the statements CW 13 made to Ms. Chall and me.

9. During the August 3, 2009 interview, CW 13 expressed concern that sharing information and assisting in our investigation presented a threat to him, and that his career had already been negatively impacted when he provided information to attorneys in another case involving a separate company. Statements contained in paragraphs 2-9 of CW 13's Declaration (ECF #193-11, Ex. 11) are directly contrary to what CW 13 told Ms. Chall and me during our August 3, 2009 interview.

10. On August 17, 2009, BLBG attorney Michael Petrusic, investigator Jaclyn Chall, and I contacted CW 9 to follow up on several topics CW 9 had discussed with Jaclyn Chall during their prior conversations on April 29, 2009 and May 27, 2009. At that time, CW 9 informed Mr. Petrusic, Ms. Chall and me that he no longer felt comfortable speaking with us about our investigation because he was still in the industry and his primary concern was providing for his family.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 3, 2011.

Michael D. Blatchley

4