# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

**PLACEHOLDER FOR**
**<u>DECLARATION OF MICHAEL PETRUSIC</u>**

MINNEAPOLIS FIREFIGHTERS'
RELIEF ASSOCIATION, *et al.*,

                Plaintiff(s)

v.                                        Case Number: 0:08-cv-06324-PAM-AJB

MEDTRONIC, INC., *et al.*,

                Defendant(s)

This document is a place holder for the following item(s) which are filed in conventional or physical form with the Clerk's Office:

DECLARATION OF MICHAEL PETRUSIC

If you are a participant in this case, this filing will be served upon you in conventional format.

This filing was not e-filed for the following reason(s):

  x  Item Under Seal pursuant to a court order* (Document number of protective order: 103 )

* Filing of these items requires Judicial Approval.

E-file this place holder in ECF in place of the documents filed conventionally. File a copy of this Placeholder and a copy of the NEF with the Clerk's Office along with the conventionally filed item(s).

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MEDTRONIC, INC., *et al.*,<br><br>Defendants. | Civil No. 0:08-cv-06324-PAM-AJB |

**DECLARATION OF MICHAEL PETRUSIC**

I, Michael Petrusic, hereby declare as follows:

1. I am a Judge Advocate in the United States Army and am currently serving in that capacity as part of Regional Command-South in Kandahar, Afghanistan. From April 2009 until September 2010, I worked as an attorney for Bernstein Litowitz Berger and Grossmann LLP ("BLBG") and was admitted *pro hac vice* to this Court to appear in *Minneapolis Firefighters' Relief Assoc. v. Medtronic*, Civ. No. 08-6324. I withdrew as counsel of record in this matter in September 2010, when I resigned from BLBG to return to active duty service in the military. I have personal knowledge of the matters stated herein and, if called upon I could and would competently testify thereto, although I respectfully request that the Court take into consideration the impact and difficulty of temporarily leaving my current duty position to appear for testimony.

2. I received a bachelor of arts from the University of Virginia in 1999, and attended law school and received a juris doctorate from the University of North Carolina School of Law in 2007. Prior to law school, I served as a Captain in the United States Army as a member of the 82nd Signal Battalion, 82nd Airborne Division. During that time, I completed one deployment to Iraq, and was awarded the Bronze Star Medal and the Meritorious Service Medal for my service. While at BLBG, my practice was primarily devoted to prosecuting securities class actions such as this one, and I oversaw the investigation and drafting of complaints in several actions alleging violations of the federal securities laws and other corporate misconduct. In September 2010, I resigned from BLBG to return to active military service. I am currently serving in Kandahar, Afghanistan.

3. In April 2009, under the direction of BLBG senior partner Salvatore Graziano, I, along with several other BLBG attorneys and investigators who were previously assigned, was directed to investigate and research facts supporting claims for securities fraud alleged in *Minneapolis Firefighters' Relief Assoc. v. Medtronic*, Civ. No. 08-6324. As part of that investigation, I worked closely with Salvatore Graziano and BLBG attorney Michael Blatchley to supervise and monitor the work of BLBG's in-house investigators, including BLBG's Director of Investigations, Amy Bitkower, and BLBG investigators Lisa Burr and Jaclyn Chall, who interviewed numerous former Medtronic employees concerning the allegations in this case.

4. In overseeing the investigation and in preparing Lead Plaintiffs' Consolidated Class Action Complaint (ECF #68), I regularly reviewed interview memoranda prepared by the investigators, followed up with questions and input for future interviews, and discussed the facts learned through those interviews and the progress of the investigation with BLBG's investigators. Throughout this process, I sought to confirm, through numerous discussions with the investigators, that the information obtained from the CWs was accurate, and took great care in drafting, editing and reviewing allegations in the Complaint—including those that were based on the investigators' interviews with the CWs—to ensure they were correct and accurately reflected the interview memoranda prepared by the investigators. In no way was any fact alleged in the Complaint intentionally misstated.

5. I have reviewed the declarations submitted by the Defendants from the CWs cited in the Complaint, and the paragraphs of the Complaint containing information

2

attributed to each witness. Notwithstanding the witness declarations, the Complaint accurately reflects the information provided by the witnesses, with the following exceptions:

    (a)    ███████ who is identified in the Complaint as CW 14, stated that he worked at Kyphon from 2005 until it was acquired by Medtronic in November 2007. He then remained with Medtronic until August 2008. ███████ noted that even while with Kyphon before Medtronic's acquisition of the company, he worked closely with Medtronic's Spinal and Biologics division.

    (b)    ███████, who is identified in the Complaint as CW 4, appears to have stated that Medtronic would have a surgeon (instead of sales representatives) instruct groups of other surgeons to use roughly half the indicated dosage of rhBMP-2 in cervical applications on the company's behalf. However, while this point is unclear, ███████ further stated that off-label uses of INFUSE, including cervical fusion procedures, were communicated at national sales meetings, and he additionally stated that Medtronic instructed its sales force to inform surgeons as to how other surgeons were using the product in off-label applications.

    6.    I participated directly in an interview with the Medtronic former employee referred to in the Complaint as CW 9. Specifically, on August 17, 2009, BLBG attorney Michael Blatchley, investigator Jaclyn Chall, and I contacted CW 9 to follow up on several topics CW 9 had discussed with Jaclyn Chall during their prior conversations on

April 29, 2009 and May 27, 2009. At that time, CW 9 informed Mr. Blatchley, Ms. Chall and me that he no longer felt comfortable speaking with us about our investigation because he was still in the industry and his primary concern was providing for his family.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 04 November 2011

Kandahar, Afghanistan

/Michael Petrusic