# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

**PLACEHOLDER FOR**
**DECLARATION OF LISA BURR**

MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, *et al*.,

Plaintiff(s)

v.

Case Number: 0:08-cv-06324-PAM-AJB

MEDTRONIC, INC., *et al*.,

Defendant(s)

---

This document is a place holder for the following item(s) which are filed in conventional or physical form with the Clerk's Office:

DECLARATION OF LISA BURR

If you are a participant in this case, this filing will be served upon you in conventional format.

This filing was not e-filed for the following reason(s):

__x__ Item Under Seal pursuant to a court order* (Document number of protective order: __103__)

* Filing of these items requires Judicial Approval.

E-file this place holder in ECF in place of the documents filed conventionally. File a copy of this Placeholder and a copy of the NEF with the Clerk's Office along with the conventionally filed item(s).

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MEDTRONIC, INC., *et al.*,<br><br>Defendants. | Civil No. 0:08-cv-06324-PAM-AJB |
|---|---|

**DECLARATION OF LISA BURR**

I, Lisa Burr, hereby declare as follows:

1. I am an investigator employed with the law firm of Bernstein Litowitz Berger and Grossmann LLP ("BLBG"). I have personal knowledge of the matters stated herein and, if called upon I could and would competently testify thereto.

2. I graduated from Davidson College in 2005. From October 2005 through January 2008, I worked at Diligence, LLC, a global business intelligence and risk management consultant firm, where I investigated companies and individuals by gathering and analyzing information to advise clients on various business transactions. I have been employed as an investigator with BLBG since 2008. During my time with BLBG, I have been involved in securities fraud investigations concerning a variety of industries, including financial institutions/investment banks, mortgage origination companies, medical/pharmaceutical companies, technology companies, the automotive industry, and chemical/environmental companies.

3. In May 2009, I was assigned to assist in the preparation of the amended complaint in *Minneapolis Firefighters' Relief Assoc. v. Medtronic*, Civ. No. 08-6324. I was tasked with locating and interviewing former employees who could provide information concerning Medtronic's promotion of INFUSE Bone Graft. I worked directly with BLBG attorneys Salvatore Graziano, Michael Blatchley, and Michael Petrusic, as well as my direct supervisor, Amy Bitkower, and another investigator, Jaclyn Chall.

4. I typically conduct witness interviews by telephone. As part of BLBG investigatory protocol, I provide each potential witness with an extensive disclosure prior

to seeking any substantive information. At the outset of each witness contact, I confirm the witness no longer works for the company we are investigating, and I identify myself by name as an investigator employed with BLBG. I explain the reason for my call, including the name of the case, the identities of the defendants, and the main allegations against the defendants. I also disclose that I am employed with the law firm representing the plaintiff-investors.

5. In accordance with BLBG protocol, after being assigned to this case, Amy Bitkower, Ms. Chall, and I discussed an outline of the key issues and a proposed list of questions to ask potential witnesses that was based on information provided to us, including the initial complaint filed in this action, news stories addressing allegations of off-label promotion of Medtronic's INFUSE bone graft device, and other materials. This outline was reviewed, edited, and ultimately approved by Mr. Graziano, Mr. Blatchley and Mr. Petrusic. After identifying Medtronic employees with potentially relevant information, I then spoke to the following former Medtronic employees on the dates reflected on the list below:

- [REDACTED], who I understand is designated as CW 2 in the Consolidated Class Action Complaint (Dkt. #68), on May 18, 2009
- [REDACTED], on June 18, 2009 (with Mr. Blatchley)
- [REDACTED], who I understand is designated as CW 12, on May 22, 2009
- [REDACTED], who I understand is designated as CW 15, on June 8, 2009

- [REDACTED], on July 29, 2009

6. Additionally, on July 9, 2009 I interviewed [REDACTED], and on June 23, 2009 I interviewed [REDACTED]. It is my understanding that these witnesses are identified in the Complaint as CW 1 and CW 5, respectively. Neither has submitted a declaration in this action.

7. I strictly followed BLBG investigation protocols with respect to each former Medtronic employee I interviewed in this matter.

8. In accordance with my standard practice, I took contemporaneous notes in the course of each interview I conducted, including those conducted with the participation of attorneys. Once each interview was complete, in accordance with BLBG practice, I prepared an interview memorandum to memorialize each interview. Those memoranda were then distributed to Amy Bitkower, as well as attorneys Mr. Graziano, Mr. Blatchley, and Mr. Petrusic.

9. I have reviewed my contemporaneous notes of each interview and the interview memoranda. The memoranda I drafted accurately describe the information provided by each witness. At no time did I intentionally misdescribe anything a witness told me.

10. I have reviewed the declarations submitted by the Defendants from the witnesses I interviewed, the Consolidated Class Action Complaint, and the paragraphs containing information attributed to each witness. Notwithstanding the witness declarations, the Complaint accurately reflects the information provided by each witness I interviewed.

11. On March 30, 2010, I contacted each of the witnesses listed above in ¶¶5-6 and informed them either in a conversation or a voice-mail message that we were recently required to disclose both to the Court and to Medtronic the names of the individuals on whom BLBG relied in drafting the Complaint, and that the witness was among the persons whose names we had to disclose.

12. After the Complaint was filed I interviewed an additional former Medtronic employee on July 25, 2011. This employee worked as a sales representative and as a District Manager in the Midwest region. He explained that INFUSE was "huge" to Medtronic's growth and that the Company promoted the off-label use of INFUSE by, among other things, (i) providing surgeons with scientific background on the product, (ii) providing training to surgeons at surgeons' visits at Medtronic's offices and at cadaver labs at MERI (Medical Education & Research Institute, a medical training facility), (iii) facilitating and providing presentations on off-label uses of INFUSE at surgeon group "spine meetings" (such as meetings held by the North American Spine Society, the Congress of Neurological Surgeons and the American Academy of Neurological Surgery), and (iv) using Key Opinion Leaders ("KOLs") who would perform and report on results of studies they performed that involved the use of INFUSE in off-label procedures, and engaging those KOLs to speak with other surgeons about the off-label procedures they had studied.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 3, 2011.

Lisa Burr