# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

**PLACEHOLDER FOR**
**DECLARATION OF JACLYN CHALL**

MINNEAPOLIS FIREFIGHTERS'
RELIEF ASSOCIATION, *et al*.,

         Plaintiff(s)

v.                                Case Number: 0:08-cv-06324-PAM-AJB

MEDTRONIC, INC., *et al*.,

         Defendant(s)

This document is a place holder for the following item(s) which are filed in conventional or physical form with the Clerk's Office:

DECLARATION OF JACLYN CHALL

If you are a participant in this case, this filing will be served upon you in conventional format.

This filing was not e-filed for the following reason(s):

  _x_  Item Under Seal pursuant to a court order* (Document number of protective order: _103_ )

* Filing of these items requires Judicial Approval.

E-file this place holder in ECF in place of the documents filed conventionally. File a copy of this Placeholder and a copy of the NEF with the Clerk's Office along with the conventionally filed item(s).

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MEDTRONIC, INC., *et al.*,<br><br>Defendants. | Civil No. 0:08-cv-06324-PAM-AJB |

# DECLARATION OF JACLYN CHALL

I, Jaclyn Chall, hereby declare as follows:

1.     I am an investigator employed with the law firm of Bernstein Litowitz Berger and Grossmann LLP ("BLBG"). I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.     I graduated from Hofstra University in 2001 and earned a Masters degree in forensic psychology from John Jay College of Criminal Justice in 2005. I have been employed as an investigator with BLBG since 2008. During that time, I have been involved in securities fraud investigations concerning a variety of industries, including financial institutions/investment banks, mortgage origination companies, medical/pharmaceutical companies, technology companies, the automotive industry, and chemical/environmental companies.

3.     In December 2008, I was assigned to assist in the preparation of the amended complaint in *Minneapolis Firefighters' Relief Assoc. v. Medtronic*, Civ. No. 08-6324. I was tasked with locating and interviewing former employees who could provide information concerning Medtronic's promotion of INFUSE Bone Graft. I worked directly with BLBG attorneys Salvatore Graziano, Michael Blatchley, and Michael Petrusic, as well as my direct supervisor, Amy Bitkower, and another investigator, Lisa Burr.

4.     I typically conduct witness interviews by telephone. As part of BLBG investigatory protocol, I provide each potential witness with an extensive disclosure prior to seeking any substantive information. At the outset of each witness contact, I confirm the witness no longer works for the company we are investigating, and I identify myself

1

by name as an investigator employed with BLBG. I explain the reason for my call, including the name of the case, the identities of the defendants, and the main allegations against the defendants. I also disclose that I am employed with the law firm representing the plaintiff-investors.

5. In accordance with BLBG protocol, after being assigned to this case, Ms. Bitkower and I prepared an outline of the key issues and a proposed list of questions to ask potential witnesses based on information provided to us, including the initial complaint filed in this action, news stories addressing allegations of off-label promotion of Medtronic's INFUSE bone graft device, and other materials. This outline was reviewed, edited, and ultimately approved by Mr. Graziano, Mr. Blatchley and Mr. Petrusic. After identifying Medtronic employees with potentially relevant information, I then spoke to the following former Medtronic employees on the dates reflected on the list below. Attorneys also participated in the calls as indicated:

- ███████████, who I understand is designated as CW 3 in the Consolidated Class Action Complaint (ECF #68), on July 24, 2009
- ███████████, who I understand is designated as CW 4, on January 23, 2009
- ███████████, who I understand is designated as CW 6, on January 26, 2009
- ███████████, who I understand is designated as CW 7, on April 29, 2009
- ███████████, who I understand is designated as CW 8, on July 10, 2009

2

- █████████, who I understand is designated as CW 9, on April 29, 2009,
- █████████, on May 27, 2009
- █████████, on August 17, 2009 (with Mr. Blatchley and Mr. Petrusic)
- ███████, who I understand is designated as CW 10, on July 10, 2009
- ███████, on July 30, 2009
- ███████, on August 19, 2009
- ████████, who I understand is designated as CW 11, on January 16, 2009
- █████████, who I understand is designated as CW 13, on August 3, 2009 (with Mr. Blatchley)
- ████████, who I understand is designated as CW 14, on February 9, 2009
- ███████, on February 18, 2009

I strictly followed BLBG investigation protocols with respect to each former Medtronic employee I interviewed in this matter.

6. In accordance with my standard practice, I took contemporaneous notes in the course of each interview I conducted, including those conducted with the participation of attorneys. Once each interview was complete, in accordance with BLBG practice, I prepared an interview memorandum to memorialize each interview. Those memoranda were then distributed to Amy Bitkower, as well as attorneys Mr. Graziano, Mr. Blatchley, and Mr. Petrusic.

3

7. I have reviewed my contemporaneous notes of each interview and the interview memoranda. The memoranda I drafted accurately describe the information provided by each witness. At no time did I intentionally misdescribe anything a witness told me.

8. During my August 17, 2009 conversation with ███████████, ██ ███████ informed myself, Mr. Blatchley, and Mr. Petrusic that he no longer wished to speak with us because he continues to work in the industry and his primary concern is providing for his family.

9. I have reviewed the declarations submitted by the Defendants from the witnesses I interviewed, the Consolidated Class Action Complaint, and the paragraphs containing information attributed to each witness. Notwithstanding the witness declarations, the Complaint accurately reflects the information provided by each witness to the best of my knowledge, with the following exceptions:

(a) ███████, who I understand is identified in the Complaint as CW 14, informed me that he worked at Kyphon from 2005 until it was acquired by Medtronic in November 2007. He then remained with Medtronic until August 2008.

(b) I believe that ███████, who I understand is identified in the Complaint as CW 4, stated that Medtronic would have a surgeon (instead of sales representatives) instruct groups of other surgeons to use roughly half the indicated dosage of rhBMP-2 in cervical applications. However, while this point is unclear, ███████ stated that specific off-label uses of INFUSE,

4

including cervical fusion procedures, were communicated at national sales meetings, and he additionally stated that Medtronic instructed its sales force to inform surgeons as to how other surgeons were using the product in off-label applications.

10. The information contained in ▮▮▮▮▮ declaration regarding his responsibilities at Medtronic and his knowledge of Medtronic's marketing of INFUSE is not consistent with the information he provided during my interview. The Complaint accurately reflects the information that ▮▮▮▮▮ communicated to myself and Mr. Blatchley during our interview of him.

11. On March 30, 2010, I contacted each of the witnesses listed above in ¶5 (with the exception of CW 14, who could not be reached at the time) and informed them either in a conversation or a voice-mail message that we were recently required to disclose both to the Court and to Medtronic the names of the individuals on whom BLBG relied in drafting the Complaint, and that the witness was among the persons whose names we had to disclose.

I declare under penalty of perjury that the foregoing is true and correct. Executed on _November 3, 2011___.

_____
Jaclyn Chall

5