IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, et al.,<br><br>        Plaintiffs,<br>v.<br><br>MEDTRONIC, INC., et al.,<br><br>        Defendants. | No. 0:08-cv-6324 PAM AJB |

## DECLARATION OF JERRI PROVINCE

I, Jerri Province, do hereby state under penalty of perjury:

1.  I am a Senior Paralegal at Medtronic Spinal & Biologics (the "Company") in Memphis, Tennessee. I have been employed in this position since about 2002 and have been employed by the Company since 1998. Part of my job responsibilities include working with outside counsel to retrieve and review Company records. In that capacity, I assisted outside counsel in retrieving and reviewing the Company records that were used to prepare Exhibit 51 to Plaintiffs' Motion to Compel.

**The Burden Of Assembling The Information In Plaintiffs' Exhibit 51**

2.  I understand that the plaintiffs have pointed to Medtronic's assembly of detailed information for six doctors in Plaintiffs' Exhibit 51 as evidence that it is not a burden for Medtronic to assemble the same information for 192 doctors and other third parties. I disagree. To pull together the information concerning the six doctors who

appear in Exhibit 51, a team of seven attorneys and two rotating teams of five paralegals each traveled to Memphis to review the hard copy documents that we retrieved through this process. The seven attorneys (and another four that worked remotely) spent approximately 1,602 hours reviewing Company records and the ten paralegals spent approximately 1,057 hours reviewing those records and assisting the attorneys in their review. Assembling the data for these six doctors alone was an enormous burden. It would be a proportionally larger burden to satisfy the plaintiffs' current request. The cost of that time to Medtronic was approximately $791,687.

3. To prepare the information on payments to the six doctors listed in Plaintiffs' Exhibit 51, the Company took numerous steps. We interviewed numerous employees, queried and cross-checked across multiple electronic systems, and reviewed voluminous hardcopy documents. One of the principal tasks we did was to search Medtronic's accounting systems for any direct payment to the doctor (or sometimes to an affiliated entity of the doctor). The Company had two active accounting systems during the time period in question, JD Edwards ("JDE") and SAP. The Company began using the first system, JDE, in April 2001. The Company began using the second system, SAP, in October 2006 and still uses this system today. Both systems can be searched electronically to identify payments to a particular payee. These systems contain the amount of the payment and the date, but not the additional detailed information contained in the charts in Exhibit 51. The burdens in using each system are different, so I will discuss each one in turn.

**JD Edwards**

4. Identifying information concerning payments in JDE is particularly challenging, because the supporting documentation is only in hardcopy documents stored off-site. As a result, for payments that occurred during the earlier time period when JDE was the active system, we had to pull a reference number to the payment invoice and then track the payment in the off-site hardcopy records.

5. In theory, the Company organizes these hard copy invoices in file folders by payee. However, in practice, when the boxes are sent off-site, the file folders often get jumbled and the files that we expect to see in specific boxes often are not there. In order to retrieve the file folders with supporting documentation for a particular payee, the appropriate boxes were ordered from off-site storage. We then had to try to locate within the box the files we were looking for. In instances when the files were not there, we had to attempt to find the files in other boxes. In total, to retrieve the supporting documents for the payments to Dr. Kuklo alone, we retrieved approximately 60 to 65 boxes. Then, each payment had to be reviewed for content.

**SAP**

6. The supporting documentation for payments stored on the SAP system is a little different. The supporting documentation for SAP payments is stored electronically in a separate storage database that must be retrieved manually for each individual payment. Thus, to pull the supporting documentation for any payment in SAP, we had to individually pull from the storage database the supporting documentation. These

electronic supporting documents cannot be pulled in bulk for more than one payment at a time. Also, they are not word-searchable, and therefore must be reviewed individually. Thus, even for SAP payments, the burden to chasing down information on a particular payment is significant. For Dr. Kuklo, the Company reviewed records supporting more than 500 payments in the SAP system to determine what payments should be included in Plaintiffs' Exhibit 51.

Dated: 12/14/11

_____
Jerri Province