UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MEDTRONIC, INC., *et al.*,<br><br>Defendants. | Civil No. 0:08-cv-06324-PAM-AJB |

**LEAD PLAINTIFFS' AND LEAD COUNSEL'S
LEADERSHIP STRUCTURE AND GENERAL LITIGATION
AND TASK ASSIGNMENT PLAN**

**1.   PURPOSE**

Court-appointed Lead Plaintiffs the Teachers' Retirement System of Oklahoma ("Oklahoma Teachers"); Oklahoma Firefighters Pension Fund ("Oklahoma Firefighters"); Union Asset Management Holding AG ("Union"); and Danske Invest Management A/S ("Danske") (collectively "Lead Plaintiffs"), through their counsel Bernstein Litowitz Berger & Grossmann LLP ("BLBG"), Grant & Eisenhofer P.A. ("G&E"), Kessler Topaz Meltzer & Check, LLP ("KTMC") and Motley Rice LLC ("Motley Rice") (collectively, "Lead Counsel," and together with Lead Plaintiffs, the "Group"), set forth herein the leadership structure governing Lead Plaintiffs' and Lead Counsel's prosecution of the Class's claims in the above-captioned matter and a general litigation and task assignment plan to ensure the efficient division of labor among counsel

1

and to avoid unnecessary delay or duplication of work.[1] This document is being filed with the Court at the Court's request and nothing herein is designed or intended by Lead Plaintiffs or Lead Counsel to waive any privilege or work product protected information.

This document formalizes the leadership structure and division of labor among Lead Counsel that has governed the conduct of the litigation since the Court's May 29, 2009 Order appointing Lead Plaintiffs and Lead Counsel.[2] Lead Plaintiffs' Memorandum of Law in Support of their Motion for Class Certification, Appointment of Class Representatives and Appointment of Class Counsel cited Federal Rule of Civil Procedure 23(g) (ECF No. 173 at 16), and demonstrates that the requirements of that Rule are satisfied here. Rule 23(g) provides that, in appointing class counsel, the court must

---

[1] *See* Manual for Complex Litigation, Fourth, §31.31 ("On some occasions, the appointment of more than one firm as lead counsel may be appropriate in order to protect the interests of the class. Courts that have approved the appointment of co-lead plaintiffs often have been willing to approve the appointment of more than one counsel to serve as co-lead counsel. The sharing of resources and expertise in costly cases may favor the appointment of multiple counsel.") (internal footnotes omitted).

[2] While the prosecution of this action has been conducted in the manner outlined herein since the Court's May 26, 2009 Order appointing Lead Plaintiffs and Lead Counsel (ECF No. 57; *see also* Joint Decl., ECF No. 45), Lead Plaintiffs did not submit this formal case management plan prior to the Rule 26(f) conference held by Chief Magistrate Judge Boylan on April 7, 2010. That omission was in part the result of uncertainty created by Defendants' proposal at the March 4, 2010 in-person meeting among the parties required by Rule 26(f) to stay proceedings pending an early mediation, the subsequent negotiation among the parties concerning the conditions under which such a mediation might proceed, Plaintiffs' desire to jump-start discovery by obtaining documents that Defendants had already produced to the government, and Defendants' request—made on the eve the Rule 26(f) report was to be submitted—to bifurcate discovery. *See* Ltr. from Salvatore J. Graziano to Hon. Arthur J. Boylan, dated Apr. 2, 2010, submitted *in camera* herewith. The early mediation was not successful, but Lead Counsel inadvertently did not submit this Case Management Plan after it was completed. Lead Plaintiffs assure the Court that their oversight of this action and the division of labor among Lead Counsel throughout the litigation has been consistent with what is set forth herein.

consider: "(i) the work that counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g).

As set forth in Lead Plaintiffs' previously-filed Motion for Class Certification, Lead Counsel are among the preeminent securities class action litigation law firms in the nation, have extensive experience successfully representing investors in actions just like this one, and satisfy the relevant requirements of Rule 23(g). *See* Lead Pls.' Mem. of Law in Supp. of their Mot. for Class Certification, Appointment of Class Representatives and Appointment of Class Counsel, at 16 (ECF No. 173); Decl. of Salvatore J. Graziano in Supp. of Lead Pls.' Mot. for Class Certification, Appointment of Class Representatives and Appointment of Class Counsel, at Exs. P (Firm Resume of BLBG); Q (Firm Resume of KTMC); R (Firm Resume of G&E); and S (Firm Resume of Motley Rice) (ECF Nos. 175-16, 175-17, 175-18, and 175-19). Lead Counsel's work done in identifying and investigating claims in the action, their knowledge of the applicable law, and their devotion of significant resources to prosecuting Medtronic investors' claims, is demonstrated by, for example, their: (i) conducting an extensive investigation into Defendants' alleged wrongdoing, including interviews with dozens of fact witnesses and consultation with numerous experts concerning off-label promotion, surgical practice, device technology, damages and loss causation, among other issues pertinent to Lead Plaintiffs' claims, (ii) drafting and filing Lead Plaintiffs' detailed 129-page Consolidated

3

Class Action Complaint (ECF No. 68), (iii) successfully overcoming, in large part, Defendants' motion to dismiss (see ECF No. 88), (iv) obtaining and reviewing millions of pages of Defendants' documents and identifying to Medtronic the deficiencies in the production (and ensuring such deficiencies are remedied), (v) challenging Defendants' assertions of privilege and other bases for withholding relevant discovery from Lead Plaintiffs, (vi) obtaining and reviewing documents from third parties with relevant information, (vii) successfully moving to compel the production of additional discovery from Defendants and third parties on several occasions (*see*, *e.g.*, ECF Nos. 142, 143, 242, 299 (granting, or memorializing successful outcomes of, motions to compel filed by Lead Plaintiffs)), and (viii) identifying deposition witnesses to Defendants.

Lead Counsel fully appreciate the obligations owed to the Class, and hereby reaffirm their commitment to fairly and adequately represent the interests of the Class and to vigorously and ethically prosecute all potential claims against all culpable parties in an efficient and organized manner. In accordance with the Court's Order certifying the Class on December 12, 2011 (ECF No. 287 at 24), upon the Court's review and acceptance of this Plan, Lead Plaintiffs and Lead Counsel request the Court formally appoint Lead Counsel as Class Counsel pursuant to Rule 23. Lead Plaintiffs are submitting a Proposed Order contemporaneously herewith.

**2. STRUCTURE GOVERNING LEAD PLAINTIFFS' OVERSIGHT OF ACTION**

Pursuant to Lead Plaintiffs' decision and agreement to seek lead plaintiff status as a group of four institutional investors as set forth in the previously-filed Joint Declaration

of David L. Kinney, Robert Jones, Peter Schulte, Dr. Joachim von Cornberg, Jørgen Pagh and Thomas Mitchell in Support of the Medtronic Institutional Investor Group's Stipulation and [Proposed] Order Consolidating Actions, Appointing Lead Plaintiffs and Approving Lead Plaintiffs' Selection of Lead Counsel (ECF No. 45), and the Court's Order appointing Lead Plaintiffs, Lead Plaintiffs hereby designate the following Lead Plaintiff representatives with primary responsibility for overseeing the prosecution of the action, communicating with Lead Counsel, and making strategic litigation decisions. These individuals are as follows:

   a. Regina Switzer on behalf of Oklahoma Teachers;

   b. Robert Jones on behalf of Oklahoma Firefighters;

   c. Peter Schulte and Dr. Joachim von Cornberg on behalf of Union; and

   d. Jørgen Pagh and Thomas Mitchell on behalf of Danske.

These individuals, who have been overseeing the work of Lead Counsel thus far, will continue to serve in that capacity for the duration of the litigation. These individuals, on behalf of the respective Lead Plaintiff institutions, have reviewed and affirm the leadership structure and general litigation and task assignment plan set forth herein.

**3.  ATTORNEY-IN-CHARGE DESIGNATION**

In order to facilitate orderly decision-making among Lead Counsel, each firm has designated an attorney-in-charge with the authority to speak on behalf of their firm. These attorneys are as follows:

   a. Salvatore J. Graziano on behalf of BLBG;

   b. Ramzi Abadou on behalf of KTMC;

   c. Jeff Almeida on behalf of G&E; and

   d. James Hughes on behalf of Motley Rice.

The attorneys-in-charge shall be responsible for continuing to:

   a. ensure that work is divided efficiently and appropriately among Lead Counsel;

   b. ensure that the work performed within each firm is efficient and not duplicative of work performed by other Lead Counsel;

   c. facilitate communication between Lead Counsel as necessary;

   d. continue to maintain orderly time records as requested by the Court's Order dated May 26, 2009 and detailed *infra* at §5.b.; and

   e. ensure that the litigation fund is properly maintained and that all case-related expenses are incurred in conformity with the provisions set forth *infra* at §6.

**4.   LIAISON COUNSEL**

In order to further facilitate the efficient prosecution of this action, Karl Cambronne of Chestnut Cambronne PA acts as Lead Counsel's Liaison Counsel ("Liaison Counsel"). Lead Plaintiffs previously filed Liaison Counsel's firm biography, setting forth Chestnut Cambronne's relevant experience and qualifications, in support of Lead Plaintiffs' Motion for Appointment as Lead Plaintiffs and for Approval of their Selection of Lead Counsel and Liaison Counsel. ECF No. 32-6. Liaison Counsel is responsible for participating in court appearances, including participating in discussions in court concerning discovery and other matters, advising Lead Counsel as to local

practice and procedures, as well as assisting Lead Counsel with court filings and other tasks traditionally performed by liaison counsel.[3]

## 5. GROUP COMMUNICATION

In order to remain abreast of the progress of this litigation, Lead Plaintiffs and Lead Counsel have held, and agree to continue to hold, conference calls on an as-needed basis to discuss the status of, and developments in, this action. Notwithstanding the foregoing, Lead Plaintiffs and Lead Counsel also agree that any member of the Group may convene a joint call with the Group as necessary. Lead Plaintiffs have directed Lead Counsel to advise the Group of all significant developments in the litigation, including deadlines for filing pleadings, briefs and conferences with the Court. Any pleadings, briefs or letters to defense counsel or the Court must be approved by all Lead Counsel prior to being filed with the Court or served on defense counsel. Lead Counsel shall also provide the Lead Plaintiffs with copies of any pleading filed in this action.

Lead Plaintiffs also require that any reasonable settlement overtures made by any Defendant be promptly communicated to the Group. No settlement shall be entered into with any Defendant, nor will any significant discussions concerning potential settlement begin, without the approval of Lead Plaintiffs.

## 6. ALLOCATION OF WORK

In order to ensure that the prosecution of the Class's claims will continue to be prosecuted in an efficient, cost-effective and diligent manner, Lead Counsel have agreed

---

[3] *See* Manual for Complex Litigation, Fourth, §10.221.

upon the following allocation of work among Lead Counsel. As set forth in the Declaration of Salvatore J. Graziano, dated November 3, 2011, at ¶¶13-15 (ECF No. 252), these assigned tasks have been performed by Lead Counsel in a manner consistent with the division of labor set forth below throughout the litigation:

a. **Pleadings**

   i. G&E and Motley Rice will be primarily responsible for investigating and drafting any subsequently-filed amended complaint. A working draft of any such amended complaint shall be provided to the Group at least two weeks ahead of the filing date established by the Court in order to permit all members of the Group sufficient time to review and comment on the draft.[4]

   ii. Should Defendants file a renewed motion to dismiss, KTMC and BLBG will be responsible for researching and drafting opposition briefing. A working draft of opposition briefing shall be provided to the Group at least two weeks ahead of the filing date established by the Court in order to permit all members of the Group sufficient time to review and comment on the draft.

---

[4] Per a prior agreement among Lead Counsel following the Court's appointment of Lead Plaintiffs and Lead Counsel on May 26, 2009, BLBG was assigned primary responsibility for drafting the amended complaint filed August 21, 2009 (ECF No. 68), with review and input from KTMC, G&E, and Motley Rice throughout the drafting process, and with review and approval by the Group prior to filing.

    iii. G&E and Motley Rice will be primarily responsible for drafting any summary judgment motion filed by Lead Plaintiffs and any accompanying Rule 56.1 statement.

    iv. BLBG and KTMC will be primarily responsible for drafting Lead Plaintiffs' opposition to any motion for summary judgment filed by Defendants and any accompanying Rule 56.1 statement.

    v. Upon agreement of Lead Counsel, primary responsibility for drafting motions to compel, motions *in limine*, or other pleadings will be assigned to the Lead Counsel most familiar with the subject matter of the motion and/or pleading and/or in a manner that most efficiently allocates Lead Counsel's resources.

b. **<u>Document Discovery</u>**

    i. BLBG and KTMC have been assigned primary responsibility for identifying the document discovery vendor, negotiating favorable rates for such services, and serving as the vendor's primary contacts throughout the litigation.

    ii. G&E has been assigned primary responsibility for pursuing document discovery of third-party surgeons and Medtronic securities analysts, including the issuance of document subpoenas and any subsequent negotiations with third parties concerning subpoenas.

    iii. Motley Rice has been assigned primary responsibility for pursuing document discovery of third-party Medtronic distributors, including

        the issuance of subpoenas and any subsequent negotiations with third parties concerning subpoenas.

    iv. KTMC has been assigned primary responsibility for reviewing, identifying and addressing technical and other deficiencies in Defendants' document production, including with respect to Defendants' privilege logs.

    v. Each Lead Counsel has assigned attorneys with primary responsibility for reviewing and coding Defendants' document production. Documents and other substantive issues identified during the review are discussed and analyzed among all reviewing attorneys and a small number of representatives from each Lead Counsel firm during bi-weekly conference calls, and the substantive issues and documents to be discussed are set forth in an agenda and circulated via email for review at least three days prior to the scheduled conference call. The documents to be reviewed have been divided among Lead Counsel by custodian.

c. **Deposition Discovery**

    i. BLBG and KTMC have been assigned primary responsibility for identifying a deposition transcription service vendor, negotiating favorable rates for such services, and serving as the vendor's primary contacts throughout the litigation.

    ii. Lead Counsel have agreed to divide among themselves the responsibility for taking depositions of witnesses in a manner that ensures an efficient and effective allocation of resources.

 d. Other than the filings and actions discussed herein, no significant projects will be started without approval from the Group.

7. **ATTORNEY REPORTING**

 a. Lead Counsel hold weekly conference calls on Mondays at 3:30 p.m. EST to discuss developments in the case and the progress of assigned tasks. A primary purpose of these calls is to ensure that there is no duplication of efforts among Lead Counsel on any project(s) in this action.

 b. In order to ensure accurate record keeping and to facilitate court review of time records, Lead Counsel keep contemporaneous time records which include the name of the attorney, the amount of time spent on each activity, and the nature of the work performed on any matter in this action. Lead Counsel has used similar time keeping methods in other complex cases that resulted in favorable recoveries for the classes at issue, and court approval of the requested attorneys' fees and expenses. For example, Ramzi Abadou, attorney-in-charge for this litigation at KTMC, utilized similar records to track time and to generate time reports in *In re UnitedHealth Group PSLRA Litigation*, No. 06-cv-1691(JMR/FLN) (D. Minn.); and BLBG and G&E utilized similar records to track time and to generate

reports in *In re UnitedHealth Group Inc. Shareholder Derivative Litigation*, No. 06-cv-1216(JMR/FLN) (D. Minn.).

c. Lead Counsel agree to exchange time records among Lead Counsel and to provide them to Lead Plaintiffs as requested. Lead Counsel will also provide records to the Court should a review of time records be necessary at the time of any fee application in this matter.

d. Lead Counsel shall continue to provide periodic case updates to Oklahoma Teachers, Oklahoma Firefighters, Union, and Danske. Further, Lead Counsel shall provide in-person progress reports and presentations as requested by Oklahoma Teachers, Oklahoma Firefighters, Union, and Danske.

## 8. **LITIGATION FUNDING**

a. Recognizing that this litigation has been and will continue to be complex and require extensive document discovery, the use of expert witnesses and other expenditures, Lead Counsel have established a joint litigation fund. Contributions to this fund have been and will continue to be made at regular intervals as required during the course of the litigation.

b. BLBG has been responsible for making all disbursements from the litigation fund as necessary during the course of litigation.

c. Lead Counsel will be provided with updates regarding the status of the litigation fund and any disbursements made as requested.

13

    d. No significant expenses (such as retaining investigators, consultants, experts, etc.) shall be incurred without approval of all Lead Counsel.

    e. All disbursements made from the litigation fund will be supported by appropriate documentation evidencing the expense.

Dated: January 11, 2012

**KESSLER TOPAZ MELTZER
& CHECK, LLP**

*/s/ Ramzi Abadou*
Ramzi Abadou
580 California Street, Suite 1750
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001
rabadou@ktmc.com

Dated: January 11, 2012

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**

*/s/*
Salvatore J. Graziano
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 554-1400
Fax: (212) 554-1444
sgraziano@blbglaw.com

Dated: January 11, 2012

**GRANT & EISENHOFER P.A.**

*/s/ J. A. Almeida*
Jeff Almeida
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622.7000
Fax: (302) 622.7100
jalmeida@gelaw.com

Dated: January 11, 2012

**MOTLEY RICE LLC**

*/s/ James Hughes*
James Hughes
28 Bridgeside Blvd.
Mt. Pleasant SC 29464
Tel: (843) 216-9000
Fax: (843) 216-9450
jhughes@motleyrice.com

*Counsel for the Lead Plaintiffs and Lead Counsel for the Class*

Dated: January 11, 2012

**CHESTNUT CAMBRONNE PA**

*/s/ Karl L. Cambronne*
Karl L. Cambronne
17 Washington Avenue North, Suite 300
Minneapolis, MN 55401-2048
Tel: (612) 336-2922
Fax: (612) 336-2940
kcambronne@chestnutcambronne.com

*Liaison Counsel for the Class*

14