UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MEDTRONIC, INC., et al.,<br><br>Defendants. | Civil No. 08-6324 (PAM/AJB) |

**ORDER APPROVING DISTRIBUTION PLAN**

Lead Plaintiffs, on notice to Defendants' Counsel, moved this Court for an order approving a distribution plan for the Net Settlement Fund in the above-captioned class action (the "Action"), and the Court having considered all the materials and arguments submitted in support of the motion, including the Declaration of Jason Rabe in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan (the "Rabe Declaration") and Lead Plaintiffs' Memorandum in Support of Motion for Approval of Distribution Plan, submitted therewith;

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated July 20, 2012 (Docket No. 325) (the "Stipulation"), the Notice of Pendency of Class Action and Proposed Settlement, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") (Docket No. 332-1, Exhibit A), and the Rabe Declaration and all terms used herein shall have the same meanings as set forth in the Stipulation, the Notice, or the Rabe Declaration.

2. This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Class Members.

3. Lead Plaintiffs' Motion for Approval of Distribution Plan (Docket No. 355) is **GRANTED** and the plan for distribution of the Net Settlement Fund to Authorized Claimants is **APPROVED**. Accordingly,

(a) The administrative recommendations of the Court-approved Claims Administrator, Rust Consulting, Inc. ("Rust"), to accept the Timely Eligible Claims as set forth in Exhibit C-1 to the Rabe Declaration and the Late but Otherwise Eligible Claims as set forth in Exhibit C-2 to the Rabe Declaration, are adopted;

(b) Rust's administrative recommendations to reject wholly ineligible Claims, as set forth in Exhibit C-3 to the Rabe Declaration, are adopted;

(c) Rust is authorized to accept and reject Claims-in-Process on the same basis as it did with respect to the Late but Otherwise Eligible Claims and to include the accepted Claims-in-Process in the Initial Distribution (defined below) as set forth in paragraph 29 of the Rabe Declaration. A supplement to Exhibit C to the Rabe Declaration will be filed with the Court reflecting the disposition of the Claims-in-Process.

(d) Rust is directed to distribute 100% of the available balance of the Net Settlement Fund, after deducting the payments previously allowed and approved herein, and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, to the Authorized Claimants whose *pro rata* share of the Net Settlement Fund, as set forth in the Court-approved Plan of

Allocation, is at least $20.00, as further detailed in paragraphs 37 and 39(a) of the Rabe Declaration (the "Initial Distribution");

(e) In order to encourage Authorized Claimants to promptly cash their payments, all Initial Distribution checks shall bear the following notation: "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 120 DAYS AFTER ISSUE DATE]." Lead Counsel and Rust are authorized to take appropriate action to locate and/or contact any Authorized Claimant who has not cashed his, her, or its check within said time as detailed in footnote 8 of the Rabe Declaration;

(f) Authorized Claimants who do not cash their Initial Distribution checks within the time allotted or on the conditions set forth in footnote 8 of the Rabe Declaration shall irrevocably forfeit all recovery from the Settlement, and the funds allocated to all such stale-dated checks shall be available to be distributed to other Authorized Claimants in the Second Distribution. Similarly, Authorized Claimants who do not cash subsequent distributions within the time allotted or on the conditions set forth in footnote 8 of the Rabe Declaration will irrevocably forfeit any further recovery from the Net Settlement Fund;

(g) After Rust has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks (as set forth in footnote 8 of the Rabe Declaration), but no earlier than one (1) year after the Initial Distribution, Rust shall conduct a second distribution of the Net Settlement Fund (the "Second Distribution"), pursuant to which any amounts remaining in the Net Settlement Fund after the Initial

Distribution, after deducting Rust's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, shall be distributed to all Authorized Claimants from the Initial Distribution who (1) cashed their distribution payment and (2) are entitled to at least $20.00 from the redistribution based on their *pro rata* share of the remaining funds;

(h)   In order to allow a final distribution of any funds remaining in the Net Settlement Fund after completion of the Second Distribution, whether by reason of returned funds, tax refunds, interest, uncashed checks, or otherwise:

(1)   If cost effective, not less than six (6) months after the Second Distribution is conducted, Rust shall conduct a further distribution of the Net Settlement Fund, pursuant to which all funds remaining in the Net Settlement Fund, after deducting Rust's unpaid fees and expenses incurred or to be incurred in connection with administering the Net Settlement Fund (including the estimated costs of such distribution), and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, shall be distributed to Authorized Claimants who cashed their most recent distribution checks and who would receive at least $20.00 in such further distribution. Additional redistributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur

thereafter in six-month intervals until Lead Counsel, in consultation with Rust, determine that further redistribution is not cost-effective.

(2) At such time as Lead Counsel, in consultation with Rust, determine that further redistribution of the funds remaining in the Net Settlement Fund is not cost-effective, any otherwise valid Claims received after the Claims-in-Process Cut-Off Date, i.e., February 19, 2015, and any Claims for which information supporting an upward adjustment of the Claim was received after February 19, 2015, will be eligible for payment or additional payment in accordance with subparagraph (i) below.[1] If any funds remain in the Net Settlement Fund after payment of such late or late adjusted Claims, the remaining balance of the Net Settlement Fund, after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Fund and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, shall be donated to non-sectarian, not-for-profit, 501(c)(3) organization(s) designated by Lead Counsel and approved by the Court.

(i) No further Claims may be accepted for any reason after February 19, 2015, and no upward adjustments may be made for any reason with respect to Claims for which information supporting the adjustment was received after February 19,

---

[1] New Claims received after February 19, 2015, will not be processed until Lead Counsel have determined that further redistributions are not cost effective. However, if additional information relating to Claims filed prior to February 19, 2015, is received, that information will be processed upon receipt and the procedures set forth in paragraph 30 of the Rabe Declaration will be followed.

2015, subject to the following exception. If Claims are received or modified after that date that would have been eligible for payment or additional payment under the Court-approved Plan of Allocation if timely received, then, at the time that Lead Counsel, in consultation with Rust, determine that a redistribution is not cost effective as provided in subparagraph (h)(2) above, such Claimants, at the discretion of Lead Counsel, may be paid their distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks to the extent possible;

(j) All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are hereby released and discharged from any and all claims arising out of such involvement, and all Class Members, whether or not they receive payment from the Net Settlement Fund, are hereby barred from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amount allocated to Authorized Claimants;

(k) All of Rust's fees and expenses incurred in connection with the administration of the Settlement and estimated to be incurred in connection with the Initial Distribution as set forth in Exhibit D to the Rabe Declaration are approved, and

Lead Counsel are authorized to direct payment of $1,663,635.41 out of the Settlement Fund to Rust for the unpaid balance of such fees and expenses; and

(l) Unless otherwise ordered by the Court, one (1) year after the Second Distribution, Rust shall destroy the paper copies of the Proofs of Claim and all supporting documentation, and one (1) year after all funds have been distributed, Rust shall destroy electronic copies of the same.

4. This Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and such other and further relief as this Court deems appropriate.

SO ORDERED this  24th  day of   February  , 2015.


*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge